IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

UNITED STATES OF AMERICA

v.                                                    CAUSE NO.:  3:16CR00110

RICHARD THOMAS SCOTT

**ORDER**

This matter comes before this court for consideration of the government's *Motion For Upward Departure Pursuant To U.S. Sentencing Guideline Section 5K2.0 and Downward Departure Pursuant to U.S. Sentencing Guideline Section 5k1.1* [78], as well as Defendant Richard Thomas Scott's *Response To Motion For Upward and Downward Departure Incorporating Motion To Withdraw Guilty Plea Based Upon Breach of Plea Agreement By the United States* [79]. After considering the extensive briefing provided by each party in support of their rather long-titled motions and in light of relevant statutory and case law, the court is now prepared to rule.

**Factual Background**

Following his indictment, the Defendant, Mr. Scott, entered into a Plea Agreement ("Agreement"), in which he agreed to plead guilty to Counts One and Two of the Indictment. Accordingly, Count One asserted the following charges:

> [D]id knowingly and intentionally assault the Randolph, Mississippi Postmaster Relief, a person having lawful charge, control, and custody of mail matter and moneys and property of the United States, with intent to rob, steal, and purloin such mail matter, moneys, and property, and robbed and attempted to rob said person […] and, in effecting and attempting to effect such robbery, did wound the person having charge, control, and custody of said mail

> matter, moneys, and property, and did put such person's life in jeopardy by the use of a dangerous weapon.[1]

Additionally, Count Two charged Mr. Scott with:

> [D]uring and in relation to a crime of violence, being the armed robbery and attempted armed robbery of the Randolph, Mississippi Postmaster Relief […] did knowingly use, carry and discharge a firearm, in violation of Title 18, United states Code, Sections 942(c)(1)(A)(iii) and 2.[2]

In return for Mr. Scott's cooperation in pleading guilty and testifying against his former love interest and co-defendant, Angela Roy ("Roy"), the government agreed to press no further charges and make "no objection to the Defendant receiving a reduction for acceptance of responsibility, provided that the Defendant's conduct continues to clearly demonstrate acceptance of personal responsibility for the offense up to the date of sentencing."[3]

Following Mr. Scott's testimony against Roy, the government filed a motion seeking both upward and downward departures from U.S. Sentencing Guidelines § 2B3.1, which prescribes penalties for armed robbery. In turn, Mr. Scott submitted a response opposing the upward departure as a breach of the Agreement and filed his motion to withdraw his guilty plea based upon this alleged breach.

### Standard

### I.     Upward Departure From U.S.S.G. § 2B3.1

The party alleging a plea agreement breach bears "the burden of proving underlying facts establishing a breach by a preponderance of the evidence." *U.S. v. Gonzalez*, 309 F.3d 882, 886

---

[1] Indictment [11] pg 1.
[2] Indictment [11] pg 2.
[3] Plea Supplement [52] pg 1.

(5th Cir. 2002). In *U.S. v. Valencia*, the Fifth Circuit unambiguously discussed the use and concurrent obligations of plea agreements, by stating:

> [I]f a guilty plea is entered as part of a plea agreement, the government must strictly adhere to the terms and conditions of its promises. Furthermore, when a guilty plea "rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled. In determining whether the terms of a plea agreement have been violated, the court must determine whether the government's conduct is consistent with the defendant's reasonable understanding of the agreement. *U.S. v. Valencia*, 985 F.2d 758, 760-761 (5th Cir. 1993).

Therefore, in determining whether the terms of the Agreement at issue are violated by an upward departure from sentencing guidelines, it is necessary to consider whether the government's conduct is consistent with the Defendant's reasonable understanding of the Agreement when it was made. *United States v. Wilder*, 15 F.3d 1292, 1295 (1994) (*quoting Valencia,* 985 F.2d at 761)).

## II. Guilty Plea Withdrawal

Under Rule 11 of the Federal Rules of Criminal Procedure, a defendant who demonstrates a "fair and just reason" may be permitted to withdraw a guilty plea after its acceptance by the court, but before sentencing. Fed. R. Crim. P. 11(d). In *US v. Carr*, the Fifth Circuit considered seven factors in determining whether, under the totality of the circumstances, there existed a fair and just reason to permit such a withdrawal. *United States v. Carr*, 470 F.2d 339 (5th Cir. 1984). The considerations listed in *Carr* are as follows:

1. Whether the defendant asserted his innocence
2. Whether the government would suffer prejudice if the withdrawal was granted
3. Whether the defendant delayed filing his withdrawal motion
4. Whether the withdrawal could substantially inconvenience the court
5. Whether close assistance of counsel was available to the defendant
6. Whether the original plea was knowingly and voluntarily made
7. Whether withdrawal would waste judicial resources

Further, "the *Carr* factors are considered for the totality of the circumstances, and the district court is not required to make a finding as to each individual factor." *United States v. Powell*, 354 F.3d 362, 370 (5th Cir. 2003).

## Discussion

### I. Upward Departure From U.S.S.G. § 2B3.1

In the present case, the government seeks both upward and downward departures from § 2B3.1 of the United States Sentencing Guidelines, for robbery. In requesting an upward departure, the government asserts that § 2B3.1, although punishing the Defendant for the crime for which he has pleaded guilty, does not sufficiently address the nature of Mr. Scott's crime. The government further suggests that § 2A2.1, addressing assault with intent to commit murder, is "a more appropriate description of the offense committed by the defendant."[4] This court disagrees.

First, § 2B3.1 addresses robbery crimes, including those committed with firearms "brandished or possessed" or "otherwise used." U.S.S.G. 2B3.1. This section also considers the degree of harm sustained by victims, including "bodily injury," "serious bodily injury," and "permanent or life-threatening bodily injury," and the guidelines allot liability proportionately with this assessment. U.S.S.G. 2B3.1. Mr. Scott pleaded guilty to the crime of robbery, as well as wounding the Randolph Postmaster by knowingly discharging a firearm. This offense is wholly included within the description provided by § 2B3.1 guidelines, which accounts for both the robbery and violence used by the Defendant during commission of the crime.

Secondly, acceptance of the government's claim that upward departure was reasonably contemplated by the Defendant during the Agreement's formation requires descent into a rabbit

---

[4] Government's Additional Proof, Authorities, and Briefing Regarding Motion For Departure And To Withdraw Guilty Plea [93] pg 10.

hole where "nothing would be what it is, because everything would be what it isn't."[5] A reasonable interpretation of the Agreement clearly illustrates the expectation of an exchange of services, cooperation from Mr. Scott at trial in exchange for cooperation by the government in sentencing. The government promised to make "no objection to the Defendant receiving a reduction for acceptance of responsibility."[6] This promise would be negated if an upward departure were granted because logic mandates that, by seeking an upward departure, the government, to some extent, objects to the Defendant receiving a lesser sentence. In requesting both upward and downward departures, the government is simply going through the motions of giving "some credit for [Mr. Scott's] cooperation."[7] The only purpose for such contradictory acts must be to use the upward departure to negate the downward, thereby upholding the letter, but not the spirit, of the Agreement. Approbation of such tactical maneuvers would undermine the force and integrity expected of prosecutorial agreements.

Finally, the Agreement defers sentencing to the discretion of this court. There is no evidence that Mr. Scott breached the obligations to which he agreed and, based on the wording of the Agreement, the government's reservation of the right to request an upward departure was not within Mr. Scott's reasonable contemplation when the Agreement was made. Therefore, the government's conduct is outside the scope of the Defendant's reasonable contemplation in creating the Agreement and this court now uses its own discretion to deny an upward departure.

---

[5] Carroll, L., *Alice's Adventures in Wonderland & Through the Looking-Glass*, Macmillian Publishers (1951).
[6] Plea Supplement [52] pg 1.
[7] Government's Additional Proof, Authorities, and Briefing Regarding Motion For Departure And To Withdraw Guilty Plea [93] pg 1.

5

## II. Guilty Plea Withdrawal

As previously stated, the burden of proof lies with the Defendant to show a "fair and just reason" warranting withdrawal of his guilty plea. Mr. Scott has argued that "because [t]he United States has breached its bargain Mr. Scott should be allowed the opportunity to withdraw his guilty plea."[8] However, since this court declines to allow the upward departure, which the Defendant asserts as grounds for the alleged breach, no other "fair and just reason" has been stated by Mr. Scott to permit his plea withdrawal. Therefore, the court turns to the *Carr* factors in determining whether the totality of the circumstances allow withdrawal. In considering these factors, the government's argument of the facts is persuasive. It states:

> Scott has not asserted his innocence; the codefendant has already been tried, so there is a prejudice to the government were Scott allowed to withdraw and require a trial; Scott's motion is made only a little more than two weeks before his sentencing date, so there is a substantial delay in filing this motion; the withdrawal of his guilty plea would substantially inconvenience the Court because the codefendant has already been tried, a second trial would be a waste of judicial resources.[9]

Given the lack of adequate reason for withdrawal, taken with the absence of conditions meeting the *Carr* factors, this court denies Mr. Scott's motion to withdraw his guilty plea as it currently stands with the court.

Finally, the court appreciates the Defendant's counsel's anticipation of the court's woeful deficiency in pop culture as this court has long proceeded under the premise that the phrase, "Badges? We don't need no stinkin' badges" was a masterpiece of magniloquence devised by the

---

[8] Defendant's Response to Motion For Upward and Downward Departure Incorporating Motion To Withdraw Guilty Plea Based Upon Breach of Plea Agreement By The United States ¶ 32.

[9] Government's Response In Opposition To Defendant's Motion To Withdraw Guilty Plea Based On Alleged Breach Of Plea Agreement [80], page 3-4.

epic Mel Brooks western, *Blazing Saddles*, when it, as Defendant's counsel so eloquently posits while strutting his brief moment upon the stage, originates from *The Treasure of the Sierra Madre.*

Accordingly, it is hereby ORDERED that the government's Motion For Upward Departure Pursuant To U.S. Sentencing Guideline Section 5K2.0 And Downward Departure Pursuant U.S. Sentencing Guideline Section 5k1.1 [78] is DENIED in its request for an upward departure from U.S.S.G. § 2B3.1 and GRANTED in its request for downward departure from U.S.S.G. § 2B3.1. Defendant Scott's Motion to Withdraw Guilty Plea Based Upon Breach of Plea Agreement By The United States [79] is DENIED.

SO ORERED, this the 4th day of January, 2018.

**/s/ MICHAEL P. MILLS**
**UNITED STATES DISTRICT JUDGE**
**NORTHERN DISTRICT OF MISSISSIPPI**